'After the argument, the court delivered the follow-
*55 I have considered this case, together with the arguments of counsel, and I have had great difficulty in snaking up my judgment upon some points of the case. It appears clearly that Mr. Gordon, the agent of judge Grimke, had a communication with Mr. Tucker, the complainant, relative to the sale of the land in question, and that an agreement was made between them, that Tucker should buy it for 100Z. and pay part cash, and give his bond for the remainder: That in order to get a title, the land should be sold .by the sheriff, under the execution, and that let it be bid in by Tucker at whatever price it might, the above agreement %vas to he carried into execution. The letters produced in evidence, shew that a private agreement had been made with Tucker, for the sale of the land. Tucker bought in the land for less than 1001. at the sheriff's sale; yet lie paid 70Í. down and gave his bond payable to judge Grimke for 30Z. The circumstance of liis taking sheriff’s titles, does not repel the allegation, that there was a private agreement, for that was done because neither the administrators of James Olyphant, nor the holders of an execution against his estate, could make a legal title to the laud, and the letters referió a sale by the sheriff, as the mean of getting a title. Nor does Tucker’s taking the sheriff’s title without warranty evince that by the private agreement he was not to have a warranty; for the sheriff wisely refused to give a warranty which he was not bound officially to give. The reluctance of Tucker to receive the sheriff’s title, without a warranty, carried so far as to demand back-ins money, shews that he was under an impression that he was to have a warranty; and the very circumstance of an out-standing claim on the land, which it was proved was known to both parties, must have made him more desirous to have a warranty, especially as he was giving a full pi-ice for the land, and more than any body else would then give, as the weight of testimony seems to establish. But he was persuaded by Mr. Wright ami Mr. Tennant, not to hesitate, as doubtless judge Grimke and his agent Mr. Gordon, would support him in Ills title, and reimburse him in case of the loss of the land. *56 They do not appear to have given this opinion, mala fide, but as they seemed to have honestly thought it would be just between man and man, and which they presumed would be done. Tucker was at length induced to take the sheriff’s title without warranty, though reluctantly, and evidently under an impression that lie would be protected in the title by the defendants, judge Grimke and Mr. Gordon his agent. What were the real and exact terms of the private agreement for the sale of the land, x'dative to a warranty from them, the complainant has not been able to make out by legal proof. But it is contended, that as judge Grimke in his letter, and Gordon in his, mentioned that they bad sold the land to Tucker, and as the price agreed to he paid and actually' paid, was the full value of the land, that this contained an implied agreement, that the party so selling and receiving the benefit of the purchase money, should give a warranty, and reimburse the buyer in case of loss of the land sold. It docs not appear to mo, that X should be justified to go so far as to say that the expression, I sell, or have sold, carries with it the force of an implied ’agreement to warrant the title ; especially as the statute of frauds requires contracts, relative to lands, to he in writing, and of course all the essential part of the contract j more especially in a case where the party appears to have agreed to receive sheriff’s titles, which are generally known to have no clause of warranty 5 and he has not furnished any legal proof, that there was any express stipulation, that the defendant judge Grimke, or his agent Gordon, would superadd any engagement to support the title. The court would always lay hold of slight circumstances of consent or contract coming in the shape of legal proofs, to oblige the party selling to warrant, for it Is’the justice of the case, that he should warrant when he receives a full price for the property. ‘ It is however* contended, that independently of any contract, there arises an equity for the complainant to be reimbursed the money paid and the interest, upon the failure of the consideration on which the money was paid. In this, dase it does appear that the consideration has failed,' *57 ami we must now enquire if there is such an equity in this case in favor of the complainant as this court can inforcc, and decree him reimbursement of the purchase money. The complainant’s counsel produced several cases which lay down the principles very clearly, 1 Fonbl. 361, where it is said, that as a covenant without a consideration is null, it is the same thing if the cause or consideration happen to cease; so that in all reciprocal contracts, there is a warranty in equity, though not in law: and from the following words qf the text of Fonbl, it is evident that the writer of that text meant covenants relative to lands as well as goods: and in the notes of Fonbl. to the above text, there arc many cases mentioned In which courts of equity appear to have recognized the failure of the consideration as the subject of relief. By an anonymous case 2 Ch. Ca. 19, Finch, lord chancellor relieved from the payment of the purchase money, the purchaser being evicted. The vendor had covenanted only for himself, and all claiming under him; and the eviction was by one claiming by a title paramount to the vendors. This is a case in point, and relates to land; but its authority has been greatly questioned by subsequent reasonings and adjudications, which declared the principle dangerous and tending to unsettle and enlarge .men’s contracts beyond their meaning, and even by making new contracts for them. See the notes in 1 Fonbl. 365, 6, &c. Sec also Douglas 655, case of Bree vs. Hubbock, where it is settled at law, that the assignor of a mortgage was not liable in an action for money had and received, when the mortgage totally failed, the as* signor not having covenanted for the goodness of the .title, hut only that neither he nor- his testator had incumbered the estate, and it being incumbent on the as-signee to look to the goodness of it.
I have examined the case cited-from Peak 229, ¿which is very strong) 2 Term Reports 367. 9. 2 P. Wms. 219, which ail go to establish the principle, that where the consideration fails the party suffering is entitled to reimbursement; and the cases cited by defendants’ counsel ; and I have, weighed them with great anxiety. Th$ *58 result in my mind is, that the principle reasonably quail-fled to guard against abuses is a sound one, and that reimbursement ought to be given to the party suffering by the failure of the consideration by him who received the money for the object which has failed, unless there has been a positive contract limiting the responsibilityi And tliis appears to me to be applicable as well to cases relating to land as to personal estates; for the argument' drawn by counsel from the statute of frauds does not apply | for it is not a question whether a parol agreement relative to laud shall be enforced contrary to the statute; but whether in a case where an agreement relative to lands has been executed, and the condition fails by the eviction of the laud, the party losing it is not entitled on equitable principles to reimbursement from him who received his money: it is clear of the statute in my opinion; and I do think the equity is with the complainant on the general principle j and that this court might safely give the relief prayed. But it is alleged that in this case the complainant had notice of an outstanding claim on the land, and was warned of it and bought with his eyes open, and at his own risk, and that therefore be is not now entitled to reimbursement. Two credible witnesses swore that they informed complainant of the outstanding claim, not as a light rumor, but as a certain thing. I think therefore that he should have been more cautious of buying, or if he did he should have protected himself by a special contract, to guard against the probability of loss. But on the other hand it is contended for complainant that the defendant, judge Grimkc, know that Olyphant had sold the land to. Bell, and did not give information of it to Tucker previous to the sales, and that he was bound to do so on all equitable principles; and I am clearly of opinion that ho was bound to have disclosed that fact, for though he might think it immaterial, because Olyphant had never given titles for the land to Boll, but reserved them till the whale purchase money was paid, yet bo should have communicated the 'fart to Tucker, that he might have, judged for himself, and decided whether under the circumstances he would go’on with the purchase. »
*59 Upon tlic whole, after the matures! judgment I havo been able to form on this case, I am of opinion that the defendant, judge Grimkc, is not entitled in conscience ^and equity to keep the money received from the complainant on a consideration which has failed, especially as he knew there was a doubt as to the title to the land which he directed to be sold, and did not communicate it to Tucker, who might on his part disregard information of an outstanding claim, when the defendant, a gentleman of legal learning and high character, thought so little of it as not to think it worth while to communicate it to him, which he assuredly would have done if he had deemed it important. As to Gordon, he was a mere agent, and has done nothing to make himself liable. As to Tenant and Olyphant, there is no shadow of claim against them. It is therefore ordered and decreed, that the bill he dismissed as to the defendants Tenant, Oly-phant, and Gordon, with costs of suit. That defendant, judge Grimke, do pay the sum of money received by him from Tucker from the sale of the land with interest for the same. As to the costs of suit, as the complainant’s case has been sustained with great difficulty and doubt by the court, and he is not wholly clear of censure for purchasing after the information he received, I think, the complainant and defendant judge Grimke, should each pay his own cost, and it is so decreed accordingly.
From this decree there was an appeal, by the defendant judge Grimkc, on the merits of the caso; and from the complainant Tucker, on the question of costs.
The appeal was fully argued by Mr. Gist and Col. Blanding for the appellant, judge Grimkc, and by Miv Farrow for the respondent Coh Tucker.
The court of appeals, present chancellors James, Thompson, Dcsaussurc, and Gaiilard, made the following decree:
“Alter a full investigation and consideration of the decree pronounced below, in this case, it is ordered and adjudged, that the same be affirmed; except as to the costs expended by the respondent, Starling Tucker, in the court of equity, which shall bo paid by the appellant •J. F, Grimke.”